

# THE ATTORNEY GENERAL
# OF TEXAS

CRAWFORD C. MARTIN
ATTORNEY GENERAL

AUSTIN, TEXAS 78711

May 14, 1968

Hon. J. W. Edgar
State Commissioner of
  Education
Texas Education Agency
Austin, Texas

Dear Dr. Edgar:

Opinion No. M-234

Re: Whether Article 9.38a,
Texas Election Code,
applies to a school
trustee election and re-
lated questions.

You have recently requested an opinion from this
office concerning the construction of Article 9.38a of the
Texas Election Code. The specific questions are quoted from
your letter as follows:

"1. Is Article 9.38a applicable to a
school trustee election?

"2. Does discretion lie in the Board
of Trustees to grant or refuse the applica-
tion for recount or is it a ministerial duty
to grant?

"3. What Board of Trustees acts on the
application, the Board existing on the day of
election, or the Board as constituted in part
of the newly elected trustees based on the
original canvass?

"4. What effect, if any, has the fact
that a local district court has ordered and
will have its own recount have upon said ap-
plication for recount and the school board's
power to act upon same?"

- 1139 -

The first question requires an analysis of Subdivision 1 of Article 9.38a, which is quoted, in part, as follows:

"Subdivision 1. Grounds for recount.
(a) A candidate for nomination or election
to any public office or to the party office
of county chairman or precinct committeeman
may obtain a recount of the votes cast for
the office on manually counted paper ballots,
in the manner outlined in this section:

". . ."

Our courts have long recognized that school trustees are public officers. In Lee v. Leonard Independent School District, 24 S.W.2d 449 (Tex.Civ.App. 1930, error ref.), the Court stated at page 450:

"School districts are but subdivisions
of the state government, organized for con-
venience in exercising the governmental func-
tion of establishing and maintaining public
free schools for the benefit of the people.
School trustees are public officers, whose
powers are under control of the Legislature."

Unquestionably, Article 9.38a applies to school trustee elections, where paper ballots are used.

Question Two (2) requires an analysis of subdivisions 7, 8, and 9 of Article 9.38a which deal with the duties of the canvassing board. Subdivision 7 is quoted, in part, as follows:

"Subdivision 7. Procedure for ordering
recount. (a) Where a candidate has complied
with all conditions for obtaining a recount,
as soon as practicable the canvassing board
conducting the recount shall set a date on
which the recount is to begin and shall notify
by mail each opposing candidate of the place
or places where the recount will be conducted

and the exact time when it will begin. The time for commencing the recount shall not be sooner than two days nor later than four days after the date of the notification. The recount shall be conducted in the office of the officer having custody of the voted ballots, who shall be entitled to be present or to have a representative designated by him present while the recount is in progress.

"(b) The canvassing board shall appoint a committee of three disinterested registered voters of the political subdivision in which the ballots were cast, who shall make the recount. . . . The committee shall permit any affected candidate or one person authorized in writing by such candidate to be present to watch the recount, to inspect the ballots, to observe the tallying of the votes, and to observe all other actions of the committee in connection with the recount."

Subdivision 8 is quoted, in part, as follows:

"Subdivision 8. Procedure for making the recount. (a) The canvassing board shall issue an order to the officer having custody of the voted ballots, stating the names of the recount committee and the time at which the recount is to begin, and directing him to deliver to the chairman of the committee the ballot box or boxes containing the ballots to be recounted. . . .

"(c) After the recount is completed, the committee shall make out its report and deliver it to the presiding officer of the canvassing board. The chairman of the committee shall deliver the locked ballot boxes with the original contents intact and the ballot box keys to the respective officers who originally had custody of the boxes and the keys."

Subdivision 9 is quoted as follows:

"Subdivision 9.  Action by canvassing
board following recount.  As soon as practi-
cable, and not later than two days after re-
ceiving all the committee reports, the presid-
ing officer of the canvassing board shall con-
vene the board, which at such meeting shall
declare the result of the election for the
office involved on the basis of the revised
returns.  The board and its presiding officer
shall take such further actions as may be ne-
cessary in the same manner as for an original
canvass."

It seems clear that once a candidate has complied
with the conditions for recount, the canvassing board is then
required to set a time and notify the other candidate of the im-
pending recount, and follow the statutory procedure in providing
a recount, and then canvassing the results.  The board has no
discretion in refusing the application for recount, provided
the applicant has complied with the conditions and the previously
canvassed vote shows applicant was defeated by less than five per
cent (5%) of the votes given the next highest candidate.

Question Three (3) requires an analysis of Subdivision
2 of Article 9.38a, which is quoted, in part, as follows:

"Subdivision 2.  Procedure for requesting
recount; general provisions.  (a)  A candidate
desiring a recount must file a written, signed
application with the presiding officer of the
body which canvasses the returns of the elec-
tion and makes the official declaration of the
result (hereinafter called 'canvassing board').
The application may be presented for filing at
any time after the returns from all election
precincts involved have been received from the
presiding judges of the election, and it must
be presented not later than the second day
after the official declaration of the result;
. . ."

The above quoted portion of Article 9.38a identifies the canvassing board which must act upon the application for recount, and places a limitation of time when the application must be submitted to the presiding officer of the board. In light of the fact that the Article (subdivision 2) speaks of the board as the body which canvasses the returns and declares the official declaration of result, it is our opinion that the canvassing board for recount is the board of trustees existing on the day of the election.

This position is further fortified by the fact that the time limitation whereby the applicant must submit application for recount runs from the time before the first canvass is made until no later than two (2) days after the first canvass and official declaration of result. This time limitation upon the submission of the application for recount implies that the application must go to the board as constituted on the day of election.

Additionally, the time limitation upon the procedure of recount as set out in Subdivision 7(a), (quoted above, pages 2 and 3,) shows an intent that the recount be handled as speedily as possible and still give the other candidates involved fair notice of the impending recount. Giving the statute a reasonable and practical construction, we conclude that the board of trustees, as existing on the day of election, would be in much better position as a practical matter to comply with the speedy requirements for recount than would the newly elected board. We reiterate, therefore, that it is our opinion that the board of trustees existing on the day of election must serve as the canvassing board for the recount, if any.

In regard to Question Number Four (4), we have been advised by the County Attorney of Starr County, the Honorable Frank R. Nye, Jr., that the District Court action to which you refer, in your letter, was an action instigated under Article 9.02 of the Election Code to determine if election fraud had been committed.

This office has long recognized that an action under Article 9.02 is not an "election contest." We quote from Attorney General's Opinion No. R-3009 (1952), page 3:

"Section 130 (now Art. 9.02) . . .is an ex parte proceeding conducted in a manner similar to that of a court of inquiry and is not in any manner a contest of an election which would change the results of such election."

The court action in question not being an "election contest", and not falling into the exclusive jurisdiction of the District Court as required by Section 8 of Article V of the Texas Constitution, it is our opinion that the fact that a District Court will have a recount of the ballots under authority of Article 9.02, does not prevent the utilization of the recount procedure authorized by Article 9.38a.

## S U M M A R Y

Article 9.38a, Vernon's Texas Election Code, is applicable to school trustee elections.

The board of trustees existing on the day of election will serve as canvassing board for recount, and it has a ministerial duty to order recount if the applicant meets the conditions of Article 9.38a, and the previously canvassed vote shows applicant was defeated by less than five per cent (5%) of votes given next highest candidate.

The fact that a District Court will have a recount of the ballots under authority of Article 9.02, Vernon's Texas Election Code, does not preclude a recount under authority of Article 9.38a.

Very truly yours,

CRAWFORD C. MARTIN
Attorney General of Texas

Prepared by James C. McCoy
Assistant Attorney General

Dr. J. W. Edgar, page 7 (M-234)


APPROVED:
OPINION COMMITTEE

Hawthorne Phillips, Chairman
Kerns Taylor, Co-Chairman
John Fainter
Eugene Heatly
Scott Garrison
Bill Craig

A. J. CARUBBI, JR.
Executive Assistant